UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Federal Deposit Insurance Corporation,<br><br>Petitioner,<br><br>v.<br><br>John C. Ponte,<br><br>Respondent. | Misc. Case No. 26-3 |

**APPLICATION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION
FOR ENFORCEMENT OF AN ADMINISTRATIVE ORDER FOR RESTITUTION**

The Federal Deposit Insurance Corporation (FDIC) applies to the Court under 12 U.S.C. § 1818(i)(1) for summary enforcement of an effective and outstanding Order for Restitution issued by the FDIC on October 15, 2024, against John C. Ponte (Respondent) in connection with Independence Bank (Bank), a depository institution supervised by the FDIC. Respondent—with the assistance of counsel—and the FDIC negotiated the Order for Restitution, following protracted litigation, and the Order requires Respondent to pay $1,000,000 in restitution in two installments. Respondent timely paid the first installment but has failed to pay the remaining balance of $674,000—which was due on October 15, 2025—in violation of the Order for Restitution.

A Memorandum of Law in support of this Application, Declaration of Matthew H. Doyle, Exhibits 1-5, and a proposed Order to Show Cause are attached.

The FDIC states as follows, in support of its Application:

## JURISDICTION AND VENUE

1. The Court has jurisdiction under 12 U.S.C. § 1818(i)(1) to enforce an administrative order for restitution. In pertinent part, § 1818(i)(1) provides that the FDIC "may in its discretion apply to the United States district court . . . within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section . . . and such courts shall have jurisdiction and power to order and require compliance."

2. The Court has jurisdiction over this matter because the Bank is a depository institution that has its home office in Rhode Island.

3. The Court has personal jurisdiction over Respondent because he resides in Rhode Island and because the events giving rise to the FDIC's enforcement action against him took place in Rhode Island.

## THE PARTIES AND INTERESTED ENTITIES

4. The FDIC is a government corporation with headquarters in Washington, D.C. The FDIC is a regulator and insurer of depository institutions and is organized under the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811-33e.

5. The Bank, located in East Greenwich, Rhode Island, is an insured State nonmember bank, subject to 12 U.S.C. §§ 1811-1831aa, 12 C.F.R. chapter III, and the laws of the State of Rhode Island.

6. Respondent is a resident of Rhode Island who conducted business with the Bank as sole owner and managing member of Ponte Investments, LLC (later known as Greenwich Business Capital, LLC), a business entity with its principal office in Rhode Island.

## ENFORCEMENT PROCEEDING AND ORDER FOR RESTITUTION

7. In February 2023, the FDIC issued a Notice of Charges (Notice), which began an enforcement action against Respondent and other individuals. Doyle Decl. ¶ 2.

8. The Notice alleged that Respondent had engaged in a pattern of misconduct while he was an institution-affiliated party (IAP) of the Bank, a depository institution regulated by the FDIC. Specifically, the Notice alleged, among other things, that Respondent, as sole owner and managing member of Ponte Investments, LLC, acted as the primary originator of potential loan applications for the Bank through its U.S. Small Business Administration (SBA) loan program and charged impermissible fees to borrowers. *Id.* ¶ 3.

9. The Notice, among other claims, sought the issuance of an Order of Prohibition from Further Participation under 12 U.S.C. § 1818(e) and an Order for Restitution under 12 U.S.C. § 1818(b) against Respondent. *Id.*; Ex. 1 at 49.

10. In the Notice, the FDIC sought from Respondent "at least $326,000" in restitution, based on the impermissible fees charged to borrowers. Ex. 1 at 49.

11. The FDIC learned through the enforcement proceeding's discovery process that from June 2017 through 2019, Respondent's company referred nearly 3,000 potential loan applications to the Bank, which loans were closed and funded. Doyle Decl. ¶ 5.

12. The FDIC also learned that Respondent's company charged at least $4.5 million in impermissible fees on at least 1,527 loans referred by Respondent's company and closed by the Bank. This amounted to an average impermissible fee of $2,946.95 per SBA loan. *Id.*

13. The FDIC has limited information about the remaining loans because Respondent refused to provide discovery with respect to those loans. *Id.*

14. Based on the limited available information, the FDIC sought at least $4.5 million in restitution from Respondent. *Id.*

15. Throughout the enforcement proceeding, Respondent was represented by counsel. *Id.* ¶ 4.

16. Respondent, through counsel, asked the FDIC to settle the case on the weekend before the hearing was scheduled to begin. *Id.* ¶ 11.

17. The parties negotiated over the course of the weekend and agreed to settle the matter on October 15, 2024, the first scheduled day of the hearing. *Id.*

18. Respondent and the FDIC negotiated and executed a document titled, Stipulation and Consent to the Issuance of an Order of Prohibition from Further Participation (Consent Agreement) on that same date. *Id.*

19. Respondent and the FDIC also negotiated the language of a Prohibition Order and Order for Restitution on that same date. *Id.*

20. In the Consent Agreement:

> The FDIC determined and Respondent neither admits nor denies that, from 2017 to 2019, Respondent originated potential loan applications for the benefit of Independence Bank (Bank). These potential loan applications were underwritten by the Bank. In the course of originating the potential loan applications, the Respondent violated regulations and participated in an unsafe or unsound practice in connection with the Bank, with regard to those applications. The Respondent's violations and practices in connection with the Bank resulted in financial gain and unjust enrichment for the Respondent and caused financial loss to the Bank and demonstrated a willful disregard for the safety or soundness of the Bank.

Ex. 2 at 3.

21. In the Consent Agreement, Respondent stipulated to the issuance of an Order of Prohibition under 12 U.S.C. § 1818(e) "based on the actions described in [paragraph 20 of this Application]." *Id.*

22. The Consent Agreement states that,

> The FDIC will issue a Consent Order, effective upon issuance and based on the actions described in [paragraph 20 of this Application], that will require payment by the Respondent to a FDIC designated escrow account or third-party law firm or settlement agent in the amount of $1,000,000 to reimburse parties (not including the Bank) the FDIC determines to be affected by the conduct described in [paragraph 20 of this Application].

*Id.*

23. The Consent Agreement states that,

> Respondent will comply with the Consent Order by submitting two (2) payments——totaling $1,000,000.00 (the Reimbursement Amount)—to the FDIC. The first payment will be due immediately and will be in the amount of $326,000. The second payment of $674,000 must be paid in one lump sum and will be due within one year from the issuance of the Prohibition Order.

*Id.*

24. The Consent Agreement states that,

> Respondent agrees to take no action to further prosecute Ponte v. Federal Deposit Insurance Corporation, Case No. 1:24-cv-2379-APM, which was dismissed by the United States District Court for the District of Columbia on October 11, 2024. In this regard, Respondent waives all rights to appeal that case to the United States Court of Appeals for the D.C. Circuit, or to seek reconsideration of any ruling from the United States District Court, ***or to litigate the issues in that case in any other state or federal court***.[1]

*Id.* at 4 (emphasis added).

---

[1] In August 2024, Respondent sought to block the FDIC's enforcement proceeding against him by filing a complaint seeking declaratory judgment and injunctive relief in the U.S. District Court for the District of Columbia. That complaint represents Respondent's third attempt to block the FDIC's enforcement proceeding against him in federal court; Respondent filed similar complaints in the U.S. District Court for the District of Rhode Island in January 2023 and April 2023. Each lawsuit resulted in dismissal for lack of subject-matter jurisdiction under 12 U.S.C. § 1818(i).

25. In the Consent Agreement, Respondent waived the right to:

    a. "present defenses to any allegations in the Notice[]";

    b. "a hearing on any allegations in the Notice[]";

    c. "file Proposed Findings of Fact and Conclusions of Law";

    d. "have a Recommended Decision issued by an Administrative Law Judge";

    e. "file exceptions to and briefs on a Recommended Decision"; and

    f. "seek judicial review of the Orders under 12 U.S.C. § 1818(h), or any other challenge to the validity of the Orders."

*Id.*

26. On October 15, 2024, the FDIC issued the Order of Prohibition from Further Participation under 12 U.S.C. § 1818(e) and the Order for Restitution under 12 U.S.C. § 1818(b), in accordance with the terms of the Consent Agreement. Doyle Decl. ¶ 13; *see* Ex. 3.

27. The Order of Prohibition from Further Participation and Order for Restitution became final and effective on October 15, 2024. Doyle Decl. ¶ 14; Ex. 3 at 3-4.

28. The Order of Prohibition from Further Participation and Order for Restitution were based on the FDIC's finding that "Respondent participated in violations of regulations and engaged or participated in unsafe and unsound practices in connection with the Bank." Ex. 3 at 3.

29. The Order of Prohibition from Further Participation and Order for Restitution describe Respondent's violations and unsafe and unsound practices as having "caused the Bank to suffer financial loss" resulting in Respondent's financial gain and unjust enrichment. *Id.*

30. The Order for Restitution, among other things, directs Respondent to "pay restitution of $1,000,000, in the time and manner set forth in the Consent Agreement, to

reimburse parties (not including the Bank) the FDIC determines to be affected by [Respondent's] conduct." *Id.* at 4.

31. The Consent Agreement specifies that the "first payment will be due immediately and will be in the amount of $326,000." Ex. 2 at 3.

32. Respondent made the first payment of $326,000 on October 15, 2024, to the FDIC, in accordance with the Consent Agreement, and the FDIC transferred those funds to its third-party settlement agent Simpluris on December 4, 2024. Doyle Decl. ¶ 16.

33. The Order for Restitution—cross-referencing the terms of the Consent Agreement—requires Respondent to pay the balance of $674,000 by one year after the issuance of the Order of Prohibition from Further Participation, that is, by October 15, 2025. *Id.* ¶ 17; *see* Ex. 3 at 4; Ex. 2 at 3.

34. The Order for Restitution states, "the provisions of this Order shall remain effective and enforceable except to the extent that, and until such time as, any provisions of this Order shall have been modified, terminated, suspended, or set aside by the FDIC." Ex. 3 at 4.

35. The FDIC has not modified, terminated, suspended, or set aside any provisions of the Order for Restitution. Doyle Decl. ¶ 19.

36. The FDIC has identified as payees for restitution 1,435 small businesses that were harmed by Respondent's misconduct (some of these businesses closed multiple SBA loans). *Id.* ¶ 20.

37. Between at least early August 2025 through mid-November 2025, the FDIC and Respondent's counsel communicated on several occasions about the outstanding restitution amount. *Id.* ¶ 21.

38. On October 10, 2025, Valentine Austriaco & Bueschel, P.C.—the firm hired to oversee the administration of the distribution of the restitution funds—sent a reminder letter via email to Respondent's counsel that the outstanding balance of $674,000 was due by October 15, 2025, and provided wiring instructions for payment. *Id.* ¶ 21.

39. Respondent failed to pay the outstanding balance of $674,000 by October 15, 2025. *Id.* ¶ 23.

40. On October 16, 2025, Respondent, through counsel, informed the FDIC that he would not be making the outstanding restitution payment. *Id.* ¶ 24.

41. The FDIC reminded Respondent, through his counsel, on October 23, 2025, and November 19, 2025, that he still owed restitution in the amount of $674,000. *Id.* ¶ 25.

42. As of March 3, 2026, Respondent has not paid any of the remaining balance of $674,000. *Id.* ¶ 26.

43. The Order for Restitution remains effective and outstanding under 12 U.S.C. § 1818(i)(1). *Id.* ¶ 27.

44. Many of the 1,435 small-business borrowers have yet to receive the amount of restitution to which they are entitled under the Order for Restitution. *Id.* ¶ 28.

## RELIEF SOUGHT

The FDIC respectfully requests that the Court: (1) issue an Order, under 12 U.S.C. § 1818(i)(1), enforcing the FDIC's Order for Restitution; and (2) grant any other relief the Court deems just and proper.

| | |
|---|---|
| Dated: March 4, 2026 | Respectfully submitted, |
| | **Andrew J. Dober** |
| | Senior Counsel |
| | **Shirley H. Huang** |
| | Senior Counsel |
| | |
| | _____ |
| | |
| | **Graham N. Rehrig** |
| | Counsel |
| | Va. Bar No. 84353 |
| | Federal Deposit Insurance Corporation |
| | 1776 F. St. NW |
| | Washington, D.C. 20006 |
| | (202) 898-3829 |
| | Fax: N/A |
| | Email: grehrig@fdic.gov |
| | *Counsel for Federal Deposit Insurance Corporation* |